UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------x
                                             :
WESTGATE FINANCIAL CORP.,                    :
                                             :
                         Plaintiff,          :      10 Civ. 8102 (TPG)
                                             :
             – against –                     :         OPINION
                                             :
BEINONI OF NY INC., et al.,                  :
                                             :
                         Defendants.         :
                                             :
--------------------------------------------x
```

This case concerns a dispute over a factoring agreement entered into by Beiononi of N.Y., Inc. ("Beinoni") and Westgate Financial Corp. ("Westgate"). Westgate alleges that defendants fraudulently sold and assigned receivables to Westgate to obtain financing under the factoring agreement. Westgate brings contract claims, claims under the Racketeering Influenced and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961, and claims under New York Uniform Fraudulent Conveyance Act, N.Y. Debtor & Creditor Law sections 270-81 ("DCL"). Defendants move to dismiss pursuant to Rule 12(b)(6) and, in the alternative, move for summary judgment.

The court grants in part and denies in part defendants' motion to dismiss, and the court denies defendants' motion for summary judgment in its entirety.

**THE COMPLAINT**

Except where otherwise indicated, all facts are drawn from the complaint and are assumed to be true for purposes of this motion.

The Parties

Plaintiff Westgate Financial Corp. is a factoring company based in New Jersey. Defendants Beinoni, Bapaz Garments Corp. ("Bapaz"), Shalom Tex International Corp. ("Shalomtex"), Multinational Impex Inc. ("Multinational"), Modeani Group Ltd. ("Modeani"), and Modeani of NY Inc. ("ModeaniNY") are garment companies that are, or were, based in New York (some of these companies have been dissolved). Defendants Payman Kafash a.k.a. Peter Kafash ("PKafash"), Mousa Kafash ("MKafash"), Abihey Kafash ("AKafash"), and Neda Kafash ("NKafash") (collectively, the "Individual Defendants") are members of the same family and are residents of New York.

The garment companies named as defendants are generally owned or controlled by the Individual Defendants. Westgate claims that Beinoni, Bapaz, Modeani, ModeaniNY, Multinational, and Shalomtex were "related companies" due to their alleged common ownership and control by the Individual Defendants.

The Present Action

Westgate and Beinoni entered into a factoring agreement on or about November 17, 2005. Pursuant to this factoring agreement, Beinoni granted Westgate a first-priority security interest in, among

other things, its present and future accounts and accounts receivable, as well as the proceeds thereof.  In performance of this agreement, Beinoni sold and assigned all of its accounts receivable to Westgate, and Westgate made loans to Beinoni from time to time against the payments of the purchase price of the receivables.  Beinoni submitted written sales and assignments of invoices to Westgate, and represented and warranted that all invoices represented bona fide sales of goods to the listed customers on each invoice.  PKafash and Multinational executed guaranty agreements guaranteeing Beinoni's performance of its obligations under the factoring agreement.  AKafash also executed a guaranty agreement guaranteeing the validity of invoices assigned to Westgate under the factoring agreement.

Westgate alleges that in 2006, the defendants "embarked on a series of schemes to steal from lenders and trade credit insurers of entities they owned . . . or controlled including Westgate, Coface and Euler Hermes American Credit Indemnity Company by means of various false pretenses and fraudulent activities."  Westgate claims that Beinoni began assigning it fraudulent invoices in August 2009 and that it suffered $1,523,591.95 in damages due to this alleged scheme.  As part of this scheme, Westgate alleges that Beinoni fraudulently sold and assigned receivables to Westgate pursuant to the factoring agreement, including the following types of invoices:

- invoices based on transactions that never occurred;

- invoices from future sales of goods not yet shipped or which were never shipped;

- invoices for goods not shipped by Beinoni, but by one or more affiliated defendants;

- invoices against purchase orders issued to an affiliated defendant and not lawfully assigned to Beinoni;

- double invoices issued on account of one shipment;

- invoices representing the sale of goods that were not compliant with the terms of the purchase order;

- invoices that were issued in the name of Beinoni that were sold and assigned to Westgate at the same time that other defendants issued invoices in other names to the same customers for the same goods and then sold those same invoices to other factors; and

- invoices representing the re-sale of goods returned to Beinoni that were shipped under invoices sold and previously assigned to Westgate.

Westgate alleges that defendants breached their contractual obligations under the factoring agreement.  (Claim 1).  Westgate also seeks to hold PKafash, Multinational, and AKafash to guaranty agreements guaranteeing Beinoni's obligations under the factoring agreement.  (Claims 2-4, respectively).  Westgate also seeks legal fees from Beinoni, Multinational, PKafash, and AKafash pursuant to the factoring agreement.  (Claim 5).  Westgate claims defendants also violated RICO and conspired to violate RICO by committing mail and wire fraud.  (Claims 6 and 7.)  Finally, Westgate alleges that from August 2009 forward, Beinoni made various payments to other defendants and other unrelated entities in violation of the DCL.  (Claims 8 and 9).

## DISCUSSION

Defendants originally moved for dismissal pursuant to Rule 12(b)(6) or, in the alternative, summary judgment, on all of Westgate's claims.  However, defendants partially withdrew that motion and now only seek such relief with respect to the claims for Breach of Guaranty against AKafash (Claim 4), Civil RICO (Claim 6), Conspiracy to Commit RICO Violations (Claim 7), Fraudulent Conveyance against NKafash, AKafash, PKafash, Shalomtex, Multinational, Modeani, and ModeaniNY (Claim 8), and Accounting for Fraudulent Conveyances (Claim 9).

I.      <u>Claim 4: Breach of Guaranty against AKafash</u>

Defendants argue that Westgate's claim for breach of guaranty fails because defendants did not commit any fraudulent conduct or assign Westgate any untruthful invoices.

As noted above, defendants have conceded that the breach of contract claim is sufficient to withstand their motion.  Westgate's breach of contract allegations, which include claims that invoices were false, squarely implicate AKafash's guaranty agreement, which guarantees that all invoices are valid and genuine.  There is no basis for dismissal of this claim.

II.     <u>Claim 6: Civil RICO</u>

Defendants argue that Westgate's RICO claims should be dismissed for failure to plead a pattern of racketeering activity.

The RICO statute prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  To satisfy the "pattern" requirement, the factual allegations must meet two standards: relatedness and continuity.  <u>Gross v. Waywell</u>, 628 F. Supp. 2d 475, 485 (S.D.N.Y. 2009).

Plaintiff's RICO claim is dismissed for failure to adequately plead continuity.  Continuity may be satisfied by showing "either . . . a closed period of repeated conduct [closed-ended continuity], or . . .  post-conduct that by its nature projects into the future with a threat of repetition [open-ended continuity]."  <u>H.J., Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 241 (1989).  Closed-ended continuity may take the form of "a series of related predicate acts which occurred over a substantial period of time."  <u>Id.</u> at 242.

It is not disputed that there is no open-ended continuity here because defendants' textile business is not by its nature unlawful, and now that the factoring agreement has been terminated, there seems little threat of defendants continuing these alleged activities against Westgate.  See <u>Ray Larsen Assocs., Inc. v. Nikko America, Inc.</u>, No. 89 Civ. 2809 (BSJ), 1996 WL 442799, at *7 (S.D.N.Y. Aug. 6, 1996).

With respect to closed-ended continuity, Westgate has attached to its complaint a document that apparently is a summary of the allegedly fraudulent invoices, which demonstrates that the earliest invoice plaintiff is disputing was dated June 2009, and the most recent invoices were dated June 2010.  This is roughly consistent with the allegations in the complaint that Beinoni began assigning fraudulent invoices to Westgate in August 2009 and Westgate terminated the Factoring Agreement in August 2010.  Thus, all of the allegedly fraudulent invoices referred to by plaintiff were directed by defendants toward Westgate took place over the course of approximately one year, which is not considered a "substantial period of time" in the Second Circuit.  See, e.g., id. at *8.  Indeed, in the Second Circuit, a substantial period of time generally should be at least two years.  See Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999).

Apparently seeking to extend the scope of the pattern, Westgate alleges that defendants were involved in similar fraudulent activities with respect to both Westgate and other factoring and credit insurance companies, such as Euler and Coface, over a period of approximately three years – from 2006 until 2009.  However, Westgate has not pleaded that the fraudulent acts that took place before August 2009 involved fraud directed at Westgate.  Unrelated predicate acts allegedly committed against victims other than Westgate (such as Euler and Coface) may not be used to extend the scope of the pattern of racketeering activity.  See

Burdick v. American Express, 865 F.2d 527, 529 (2nd Cir. 1990); Ray Larsen Assocs., Inc., 1996 WL 442799, at *7 ("[A]cts... [that] are unrelated to the predicate acts which allegedly injured plaintiff . . . cannot be considered as part of the activity to extend the scope of the pattern."). Therefore, Westgate's RICO claim is dismissed because Westgate has not pleaded a pattern of racketeering activity.

Westgate has requested leave to replead its RICO claim if the RICO claim is dismissed. Leave to replead should be freely granted, except where it would be futile. Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000). Westgate, in seeking permission to replead, has not indicated that it would be able to replead its complaint to properly allege a sufficiently continuous pattern of racketeering activity conducted by defendants against Westgate. Therefore, it would be futile to allow repleading of Westgate's RICO claim.

III.   Claim 7: Conspiracy to Commit RICO

"Dismissal of plaintiff's substantive RICO claim . . . mandates dismissal of the conspiracy to commit RICO claim . . . as well." Purgess v. Sharrock, 806 F. Supp. 1102, 1110 n. 9 (S.D.N.Y.1992). As discussed above, Westgate has not sufficiently alleged the existence of a pattern of racketeering activity. Accordingly, the RICO conspiracy claim is dismissed.

IV.   Claim 8: Fraudulent Conveyance against NKafash, Shalomtex, PKafash, AKafash, Multinational, Modeani Group, and ModeaniNY

Westgate alleges that certain transfers made by defendants (the "May 2010 Transfers") were fraudulent conveyances in violation of various sections of the DCL.  Defendants concede that Westgate has pleaded sufficient facts to survive defendants' motion to dismiss Claim 8 to the extent it is asserted against defendants Beinoni, Bapaz, and MKafash.  The court believes Westgate sufficiently states a claim with respect to all defendants.

V.   Claim 9: Accounting for Fraudulent Conveyances

Westgate bases this claim on certain "Other Transfers" which it claims Beinoni made to Apple Valley 8 Cinema, LLC, Cinema Holdings, Gator 4, and Tallahassee 8.  Westgate claims that the Other Transfers, like the May 2010 Transfers, were fraudulent conveyances.  The court believes Westgate sufficiently states a claim with respect to all defendants.

Summary Judgment

Defendants have also moved for summary judgment dismissing the complaint.  Summary judgment should rarely be granted where, as here, there has been no discovery.  Adipair Ltd. v. PLD Int'l Corp., No. 01 Civ. 0765 (MBM), 2002 U.S. Dist. LEXIS 23375, at *11-12 (S.D.N.Y. Dec. 5, 2002).  Defendant's summary judgment motion is premature, as there are numerous disputed factual issues about the validity of the invoices. The motion for summary judgment is denied.

**CONCLUSION**

Defendants' motion to dismiss is denied to the extent defendants seek dismissal of Claims 1-5 and 8-9.  Defendants' motion to dismiss is granted with respect to Claims 6 and 7.  Leave to replead claims 6 and 7 is denied.   Summary judgment is denied.

SO ORDERED.

Dated:  New York, New York
          January 25, 2012

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/25/12

- 10 -